UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YEIMI DEL VALLE PARDO MAURY,<br>Petitioner(s),<br>v.<br>BRUCE SCOTT, et al.,<br>Respondent(s). | CASE NO. C26-3643-KKE<br>ORDER GRANTING HABEAS PETITION |

Petitioner filed a petition for a writ of habeas corpus, representing herself,[1] asserting that her arrest and detention by U.S. Immigration and Customs Enforcement ("ICE") without a hearing violated her right to due process. Dkt. No. 1. The Court has reviewed the Government's[2] return and Petitioner's traverse, and the balance of the record. The Court will grant Petitioner's habeas petition and order her immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela who, in March 2023, applied for admission to the United States. Dkt. No. 10 ¶¶ 3–4. Petitioner was served with a notice to appear charging her as an "arriving" noncitizen under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, and ordering her to appear before an immigration judge on September 26, 2028. Dkt. No. 9-

[1] Petitioner later obtained representation. *See* Dkt. Nos. 7, 11.

[2] This order refers to the federal Respondents collectively as "the Government."

1. That same day, Petitioner was paroled into the United States pending her removal proceedings. Dkt. No. 9-2 at 5–6. Over the next few years, Petitioner obtained work authorization through November 20, 2029; found employment; applied for asylum; got married; and paid taxes. Dkt. No. 1 ¶ 2; Dkt. No. 1-2 at 1–31.

On July 6, 2026, Petitioner, on the erroneous advice of a Venezuelan attorney, appeared remotely rather than in person as required at an initial master calendar hearing in her removal proceedings and was ordered removed *in absentia*. Dkt. No. 1-2 at 18–27, Dkt. No. 10 ¶ 7. Petitioner attempted to file a motion to reopen her removal proceedings, with the assistance of the same Venezuelan attorney, but the motion was rejected for lack of fee receipt on July 14, 2026. Dkt. No. 1-2 at 18–27, Dkt. No. 10 ¶ 8. When Petitioner appeared for an ICE check-in on July 15, 2026, she was detained when the ICE officers discovered her *in absentia* removal order. Dkt. No. 9-2. While detained, Petitioner filed another motion to reopen her removal proceedings (Dkt. No. 1-2 at 18–27), and this motion remains pending as of date the traverse was filed (October 27, 2026). *See* Dkt. No. 12 at 2.

Petitioner filed this action on September 28, 2026, contending that her detention without a hearing violates her constitutional right to due process. Dkt. No. 1. The Government filed a return arguing that Petitioner is an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b) because her parole purportedly expired and automatically terminated in March 2024. Dkt. No. 8 at 5–6.[3] The Government also contends that Petitioner was not entitled to a pre-deprivation hearing and that her detention therefore comports with due process. *Id.* at 6–10.

[3] The Government cites the declaration of a deportation officer as establishing Petitioner's parole expiration date. Dkt. No. 10 ¶ 6. The contemporaneous parole document in the record does not specify an expiration date, however. *See* Dkt. No. 9-2 at 5–6.

For the following reasons, the Court disagrees with the Government and will grant the habeas petition.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that her arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir.

2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner received the process appropriate to her circumstances.

**A. Petitioner Is Not Subject to Mandatory Detention.**

To determine whether Petitioner's detention complies with due process, the Court must first determine the statutory authority governing her detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

Noncitizens may be "parole[d] into the United States temporarily … on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Parole is, however, "not [to] be regarded as an admission of the [noncitizen.]" 8 U.S.C. § 1182(d)(5)(A). Instead, once the purposes of parole are achieved, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

Department of Homeland Security ("DHS") regulations set forth conditions under which the DHS Secretary and his delegees may grant and terminate parole. *See* 8 C.F.R. § 212.5. Those regulations specify that DHS may either "automatically" terminate parole or terminate parole "[o]n notice." *Id.* §§ 212.5(e)(1), (e)(2)(i). Parole terminates automatically and without written notice where the noncitizen departs the United States, or, "if not departed, at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). In all other instances, parole "shall be terminated upon written notice to the [noncitizen]." *Id.* § 212.5(e)(2)(i).

Although the Government asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) as an "applicant for admission" because her parole expired, the Court first

emphasizes that the parole documentation in the record does not include an expiration date. And even if her parole had expired, many courts have rejected the application of Section 1225(b) to a noncitizen such as Petitioner, who was previously released on humanitarian parole and has been living in this country for more than three years. *See, e.g.*, *Baptiste v. Bondi*, No. CV 26-02586 PHX SPL (CDB), 2026 WL 1684433, at *5 (D. Ariz. May 21, 2026) (collecting cases); *Raj v. Mullin*, No. C26-1323-KKE, 2026 WL 1300423, at *3 (W.D. Wash. May 12, 2026) ("Courts throughout this circuit have found that where a noncitizen's parole has expired, and the Government makes no effort to re-detain the noncitizen after expiration despite opportunities to do so, the noncitizen's liberty interest continues to grow post-expiration and is incompatible with mandatory detention."); *Astafev v. Warden*, *Otay Mesa Det. Ctr.*, No. 3:26-cv-00313-RBM-AHG, 2026 WL 654247, at *4 (S.D. Cal. Mar. 9, 2026) (rejecting the Government's argument that the expiration of parole automatically extinguishes any due process claim).

Moreover, the Court notes that the Government's contemporaneous documentation of her arrest does not cite the expiration of her parole as the reason for her arrest and detention. Instead, the Form I-213 notes that Petitioner had been ordered removed *in absentia* the week before, and that Petitioner had attempted to reopen her removal proceedings four days before she was arrested. Dkt. No. 9-2. The Court will not credit the Government's *post hoc* justification for Petitioner's arrest.[4] *See Abreu-Guerrero v. Chestnut*, No. 1:26-cv-06959-DAD-SCR, 2026 WL 2664618, at

[4] This discrepancy is one basis on which to distinguish *Kleber Vasquez v. Hernandez*, which the Government cites in its return. No. 2:26-cv-02873-TMC, 2026 WL 2936770 (W.D. Wash. Sep. 30, 2026). In that case, the petitioner's parole expired three months before she was arrested for a domestic violence offense, and she was transferred to NWIPC upon her release from jail. *Id.*, at *1. While the *Kleber Vasquez* court found that the Government had not acquiesced in the petitioner's ongoing liberty after her parole expired, here ICE did not cite parole expiration as the contemporaneous justification for Petitioner's arrest more than two years after the date that the Government contends her parole expired.

Moreover, even if the Court assumed that Petitioner's parole expired in March 2024, the Government acquiesced in Petitioner's ongoing liberty, given that the Government did not apparently recognize that Petitioner's parole had expired until after she was already detained. The Government's acquiescence in Petitioner's continued presence in

*1 (E.D. Cal. Sep. 10, 2026) (rejecting the Government's "*post hoc* rationalization as part of an unlawful 'detain first, justify later' approach to people's liberty" (quoting *Betancourt Ulloa v. Warden, Calif. City Corr. Ctr.*, No. 1:26-cv-03360-DAD-CKD, 2026 WL 2389805, at *3–4 (E.D. Cal. Aug. 17, 2026)).

Because the Government has failed to establish that Petitioner is properly subject to mandatory detention, the Court will consider the *Mathews* factors to determine whether Petitioner's detention comports with due process.

**B. Petitioner's Detention Does Not Comport With Due Process.**

*1. Petitioner has a Protected Interest in her Liberty.*

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, Petitioner was released on parole in March 2023 and had been living freely and working in the community for more than three years before she was detained. The Government originally set Petitioner's master calendar hearing for 2028 and authorized her to work until 2029, and these facts demonstrate that Petitioner reasonably relied on her continuing freedom. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). The Court finds that Petitioner's interest in her continued liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

Accordingly, the first *Mathews* factor favors Petitioner.

---

this country is further manifested by its setting hearings and granting work authorization beyond the purported expiration of Petitioner's parole.

*2. The Risk of Erroneous Deprivation of Liberty Is High.*

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing is high. Although the Government contends (Dkt. No. 8 at 8) that because Petitioner's parole had expired, it was "authorized to … return Petitioner 'to the custody from which she was paroled': mandatory detention under 8 U.S.C. § 1225(b)(2)[,]" the Court again notes that ICE agents did not cite parole expiration when they arrested Petitioner. Instead, they justified her arrest based on an *in absentia* order that the Government concedes is not administratively final. *See id.* at 9. The Court finds that the complete lack of pre-deprivation process, compounded by the Government's conflicting justifications for Petitioner's arrest and detention, leads to a high risk of erroneous deprivation.

The Court thus finds that the second *Mathews* factor favors Petitioner.

*3. The Government's Interest in Civil Detention Without Process Is Low.*

In applying the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without process.

The Court finds that the Government's interest in re-detaining noncitizens previously released without process is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The third *Mathews* factor thus favors Petitioner.

Accordingly, the Court finds that Petitioner's due process rights have been violated.

## III. REMEDY

Having determined that Petitioner's re-detention violates her constitutional right to due process, the Court concludes her detention is unlawful and will grant her habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional re-detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that no later than October 31, 2026, Petitioner shall be released from custody subject to the same conditions of supervision that applied before she was detained on July 15, 2026. The Government shall file a status report no later than November 2, 2026, confirming Petitioner's release in compliance with this order.

Dated this 30th day of October, 2026.

Kymberly K. Evanson
United States District Judge